UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA DANIEL,<br><br>     Plaintiff,<br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>     Defendant. | NO. EDCV 04-1188-MAN<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed a Complaint on September 21, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). On October 18, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on June 3, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision and remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on September 23, 2002. (Administrative Record ("A.R.") 60-62.)  Plaintiff claims to have been disabled since August 30, 1996, due to chronic migraine headaches with aura and accompanying panic attacks, corneal guttata (dark spots on the cornea), an inoperable ganglion cyst of the middle finger of her right hand, and tendonitis of the right wrist.  (A.R. 14, 60.)  Plaintiff has past relevant work experience as a bank supervisor, bank assistant vice president, and senior bank leader.  (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On October 23, 2003, Plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Edward D. Steinman ("ALJ").  (A.R. 275-98.)  In a December 12, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 13-20, 3-5.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his December 12, 2003 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability and was insured for benefits through December 31, 2001.  (A.R. 19.)  He found that, on or before December 31, 2001, Plaintiff had "severe" impairments, consisting of migraine headaches, but that such impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, on

2

1  or before December 31, 2001.  (*Id.*)

2

3      The ALJ found that, prior to December 31, 2001, Plaintiff had the

4  following residual functional capacity:

5

6      [Plaintiff can] lift and/or carry up to 20 pounds occasionally

7      and 10 pounds frequently; and [can] sit, stand and walk for

8      about six hours each in a typical workday.  She was limited to

9      occasional climbing, balancing, stooping, kneeling, crouching,

10     and crawling; and was required to avoid exposure to hazards,

11     such as dangerous machinery or work at unprotected heights.

12

13  (A.R. 19.)  In so finding, the ALJ considered Plaintiff's allegations

14  regarding her limitations and found them to be "not totally credible for

15  the reasons set forth in the body of the decision."  (*Id.*)

16

17      Based on his residual functional capacity finding, the ALJ found

18  that Plaintiff was capable of performing her past relevant work as a

19  supervisor, manager, and assistant vice president in the banking

20  industry on or before December 31, 2001.  Thus, the ALJ concluded that

21  Plaintiff was not "disabled" prior to December 31, 2001.  (A.R. 19.)

22

23                       **STANDARD OF REVIEW**

24

25      This Court reviews the Commissioner's decision to determine

26  whether it is free from legal error and supported by substantial

27  evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

28  Commissioner's decision must stand if it is supported by substantial

                                  3

evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); <i>see also</i> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. <i>Id</i>. at 1041; <i>see also</i> <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

### DISCUSSION

Plaintiff alleges four disputed issues. <u>First</u>, Plaintiff contends that the ALJ failed to properly assess her credibility and consider her subjective complaints. <u>Second</u>, Plaintiff contends that the ALJ improperly relied on the testimony of Dr. Anvin Klein, a non-examining

4

medical expert and specialist in internal medicine and cardiology. Third, Plaintiff contends that the ALJ failed to properly consider all of the available evidence, including the evidence provided by Dr. Jeff Unger, Plaintiff's treating physician. Fourth, Plaintiff contends that the ALJ's assessment of her residual functional capacity is not supported by substantial evidence. (Joint Stip. at 3.)

**A.    The Medical Expert's Opinion Was Not Based On Substantial Evidence, And The ALJ Must Further Develop And Clarify Dr. Unger's Records On Remand.**

When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled). Broad and vague reasons will not suffice for rejecting the treating physician's opinion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001)(citation omitted); Reddick, 157 F.3d at 725. These same rules govern the ALJ's consideration of the opinions of examining physicians. Lester, 81 F.3d at 830-31.

The opinions of other physicians -- examining physicians and nonexamining, testifying medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported. *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

In his April 4, 2003 report, Dr. Unger noted that Plaintiff "has had disabling migraine headaches for over 26 years" and that, "for now, [Plaintiff] should be considered totally disabled." (A.R. 266.)   Dr. Unger further stated in this report that:

> [Plaintiff] is having headaches that occur four to seven days per month with an intensity of 8 on a scale of 10 and a duration of 7 hours.  Her pain total index is 60.  She also has a HIT score of 70 which implies that these headaches have [a] severe impact on her daily functioning.  [Plaintiff] reports that she has episodes of aura in response to environmental factors such as bright lights, Santa Ana winds and weather changes.  This results in a 60 to 90 minute period of time during which she is essentially unable to see anything until the aura stops.  Many of these auras are following by headaches but some are not.

[Plaintiff] is currently taking Topamax 100 mg b.i.d. which is a seizure medicine.  This has helped somewhat in reducing the frequency of her headache[s] but not in alleviating [her] aura.  She is also taking Maxalt for her intermittent acute headaches.  It should be noted that [Plaintiff] has failed treatment of all other triptans on the market as well as ergotamine derivatives.  In the future we are looking at initiating therapy with Botox A.

(A.R. 265-66.)  However, although Dr. Unger's report notes that Plaintiff's headaches are "disabling," it does not specify the frequency of her headaches in the past or whether her headaches had varied in severity or worsened over time.  Critically, it does not address whether he considered Plaintiff's headaches to be disabling during the 1996 through 2001 period at issue.

In discussing the records of Dr. Unger, the ALJ stated, in part:

[Plaintiff] has been followed since May 18, 1995, at least, by Jeffrey Unger, M.D.  Progress notes from Dr. Unger document tension type headaches diagnosed on comprehensive evaluation on May 18, 1995.  Since then, [Plaintiff] has tried multiple treatments with intermittent success.

.    .    .    .

In April 2003, Dr. Unger reported that [Plaintiff] had "disabling migraine headaches" for some 26 years (Exhibit 8F).

7

However, it is significant to note that [Plaintiff] actually worked throughout most of this period.  Moreover, Dr. Unger's own progress records fail to substantiate this assessment during the period on or prior to December 31, 2001.  Dr. Unger's opinion is, therefore, rejected with respect to the period on and before December 31, 2001.  [Plaintiff's] treating medical sources have otherwise provided no statement assessing [Plaintiff's] specific functional limitations during the period at issue.

(A.R. 15-17.)

In reaching his conclusion that Plaintiff was not disabled, the ALJ relied upon the testimony of Dr. Klein, the non-examining medical expert.  The ALJ specifically noted that Dr. Klein found that, "prior to December 31, 2001, the evidence fails to document a medically severe problem due to headaches."  (A.R. 17.)

Plaintiff contends that the testimony of Dr. Klein, the medical expert, was not consistent with the medical evidence regarding the severity and frequency of Plaintiff's headaches prior to her last insured date of December 31, 2001.  (Joint Stip. at 9.)  She further contends that the ALJ failed to consider all of the available medical evidence properly; in particular, she contends that the ALJ failed to consider Dr. Unger's April 4, 2003 report properly and did not provide clear and convincing reasons for rejecting Dr. Unger's opinions set

1   forth in that report."[1]   (Joint Stip. at 11.)   In addition, Plaintiff

2   contends that the ALJ's assessment of her residual functional capacity

3   is not supported by substantial evidence.   (Joint Stip. at 13-14.)

4

5        At the hearing, the ALJ questioned Dr. Klein regarding his opinion

6   as to Plaintiff's limitations based upon his review of Dr. Unger's

7   records.   Dr. Klein noted that, in November 2002, Dr. Unger wrote that

8   Plaintiff was having one headache a week.   (A.R. 290.)   The record to

9   which Dr. Klein referred, Dr. Unger's November 18, 2002 progress note,

10  states: "[Plaintiff] is much better.  She is having one headache a week

11  instead of having headaches four to five times a week."   (A.R. 156.)

12  However, when questioned as to the frequency of Plaintiff's headaches

13  between August 1996 and December 2001, Dr. Klein responded that the

14  frequency of Plaintiff's headaches was not "well documented," although

15  he later stated that "[i]t says about once a week is all she admitted."

16  (A.R. 290-91.)   When the ALJ asked Dr. Klein about the severity of

17  Plaintiff's headaches during this time period, Dr. Klein noted that he

18  did not understand the portion of Dr. Unger's notes read to him by the

19  ALJ, stating:  "frequency is two, intensity is eight, duration is 15

20  with a PDI of 122 and a milat de trib [transcribed phonetically]."

21  (A.R. 291.)  Dr. Klein did not specifically discuss Dr. Unger's April 4,

22  2003 report, and it is unclear whether he considered it.

23

24       Dr. Klein ultimately opined that Plaintiff's headache condition did

25

26  _____
            [1]    Plaintiff further contends that the ALJ improperly disregarded
    the documents contained in "Exhibit A" to the Joint Stipulation, her
    migraine diaries.  Because "Exhibit A" consists of Plaintiff's own
27  allegations regarding her headaches, they are addressed in the Section
    B, *infra*, regarding the ALJ's rejection of her claimed pain and
28  limitations.

9

not meet or equal a listed impairment and did not constitute a "severe" impairment from 1996 to 2001. (A.R. 293.) Yet, Dr. Klein found that Plaintiff's headache condition "would certainly probably meet the listing under 11.01 for [a] medically determinable impairment" after November 2002, based on Dr. Unger's November 18, 2002 progress note indicating that Plaintiff had *improved* and now was "having one headache a week." (A.R. 156, 293.) The logical implication of this, of course, is that Plaintiff was having more than one headache a week earlier and, further, that if one headache a week equated to a listed impairment in Dr, Klein's view, then more than one headache a week should as well.

Because of this inconsistency in Dr. Klein's testimony, as well as his conceded difficulty in understanding Dr. Unger's notes regarding the severity of Plaintiff's headaches during the relevant period, the ALJ's finding that Plaintiff's headaches were not disabling on or before December 31, 2001, is not supported by the record and, therefore, is not based on substantial evidence. *Cf.* <u>Morgan</u>, *supra*, 169 F.3d at 600 (testifying medical expert opinion may serve as substantial evidence when it is supported by the medical evidence of record). Moreover, although the ALJ implicitly relied on Dr. Klein's ultimate conclusion that Plaintiff's headaches were not disabling, the ALJ apparently was selective in his reliance on Dr. Klein's opinion and discounted it to some degree. In finding that Plaintiff's headache condition was "severe" prior to December 31, 2001, the ALJ apparently rejected, without explanation, Dr. Klein's contrary testimony that her headaches were not "severe" during that time.

In addition, the ALJ failed to properly consider Dr. Unger's April

10

4, 2003 report.  This report contains not only Dr. Unger's conclusion regarding Plaintiff's disability, but also statements regarding Plaintiff's headache condition suggesting that Plaintiff's limitations prior to December 31, 2001, may have been significantly greater than those that the ALJ found.  (A.R. 265-66 -- Dr. Unger's April 4, 2003 report noting that:  Plaintiff was having headaches four to seven days a week; strong narcotic and anti-seizure medication were required to control Plaintiff's headaches; she had a long history of debilitating headaches; and she experienced other debilitating symptoms such as visual disturbances in which she cannot see anything.)  Dr. Klein did not discuss Dr. Unger's April 4, 2003 report, much less provide any explanation as to whether or how it influenced his opinion.

       The critical defect in the medical evidence of record is that the frequency, duration, and severity of Plaintiff's headaches from August 1996, to December 2001, cannot be determined from Dr. Unger's treatment notes.  Both the ALJ and Dr. Klein recognized that Plaintiff's treating records do not set forth a clear statement of her limitations during this time period.  (*See* A.R. 17, 290, 294.)  Furthermore, Dr. Klein's testimony that he could not interpret Dr. Unger's July 2001 notes regarding the frequency and intensity of Plaintiff's headaches indicates that Dr. Unger's treating records must, if possible, be clarified.  Remand is therefore necessary to re-contact Dr. Unger in order to clarify the frequency, duration, and severity of Plaintiff's headaches from August 1996, to December 2001, in order to assess Plaintiff's limitations properly during that time period.  *See* 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(requirement in 20 C.F.R.

§§ 404.1512(e), 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

On remand, after further clarifying and developing the record, the ALJ should seek an additional medical opinion to determine Plaintiff's residual functional capacity and whether Plaintiff's impairments met or equaled a listed impairment under Section 11.01 prior to December 31, 2001.[2]   *See, e.g.,* 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6)(ALJ may rely upon medical consultants and medical experts based on their review of the evidence in determining whether a claimant is disabled); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence); 20 C.F.R. §§ 404.1517, 416.917 (when a claimant's medical sources provide insufficient evidence in order to determine whether the claimant is disabled, a consultative examination may be ordered).

Accordingly, the ALJ's finding regarding Plaintiff's residual functional capacity constitutes reversible error.   On remand, the ALJ should render a new residual functional capacity finding after developing the record regarding the frequency, severity, and duration of Plaintiff's headaches.

---

[2]   Because Plaintiff's residual functional capacity will be reevaluated on remand, the Court does not reach Plaintiff's contention that the ALJ's finding that she could perform "light" work is not based on substantial evidence.

**B.** **The ALJ Improperly Rejected Plaintiff's Testimony Regarding Her Limitations.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to her subjective symptoms merely because they are not corroborated by objective evidence. <u>Tonapetyan</u>, 242 F.3d at 1147-48; <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

<u>Light v. Social Security Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals. <u>Bunnell</u>, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for

rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792.   In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically).  However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Ceguerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.").  When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible. *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688

14

(9th Cir. 1979); *see also* <u>Lester</u>, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In rejecting Plaintiff's claimed symptoms, the ALJ reasoned, as follows:

> [Plaintiff] testified at the hearing that she worked since 1975 as a bank manager, in international operations. She last worked in August 1996, when she was laid off at her own request. She stated that at that time, she would awaken with a headache about three days a week, and would arrive at work late or miss work. She missed work as often as twice per week because of headaches. She stated that in August 1996, her headaches increased to daily frequency, and lasted up to eight hours. The headaches were accompanied by nausea, numbness of her tongue and lips, blurred vision, and disrupted concentration. She stated that her condition has remained essentially unchanged from 1996 until the present. When the headaches occur, she takes medication, and lies down for the duration of the headache. This occurs daily, and she needs to lie down as long as eight hours per day. When she was working, she took different medications which enabled her to work. She currently takes Topomax which controls the headaches better, but results in side effects of drowsiness and dizziness that interfere with her ability to function.

> .   .   .   .

15

[Plaintiff] has described almost daily headaches during the period at issue, which were totally incapacitating for as long as eight hours.  However, progress records indicate that by March 1999, migraines were under good control.  Although the severity and frequency of headaches have increased significantly in recent years, since January 18, 2002, during the pertinent period, migraine headaches occurred, at most, at a frequency of once every six weeks.  [Plaintiff] continued to experience tension headaches three to four times per week.  However, her headaches appeared to be related to anxiety and stress at home, and Dr. Unger noted that she refused to take Paxil as prescribed to relieve anxiety.  To the extent that her headaches persisted, her failure to take prescribed medication was a contributing factor.

(A.R. 16-17.)

Plaintiff contends that the ALJ failed to set forth clear and convincing reasons for rejecting her testimony.  She further contends that the ALJ did not properly consider her testimony as to how her headaches precluded her from working, and her symptoms arising out of her headaches about which she testified at the hearing (such as "sensitivity to light, sensitivity to sound, sensitivity to smell, nausea, vomiting, variations in visions, etc.") and which she set forth her in October 27, 2003 declaration (A.R. 149-53).[3]  (Joint Stip. at 4-

_____

[3]   However, to the extent Plaintiff argues that the ALJ's rejection of Plaintiff's credibility is in error because the ALJ did not apply all of the factors of Social Security Ruling 96-7p (Joint Stip. at 5), that argument is unavailing.  While Social Security Ruling 96-7p

16

6.)

The ALJ's reasons set forth in his rejection -- that Dr. Under's records indicated that Plaintiff's "migraines were under good control" by March 1999, and that Plaintiff only experienced "migraine" headaches once every six weeks and "tension" headaches "three to four times per week" -- do not fairly characterize Dr. Unger's records and are not clear and convincing reasons to reject Plaintiff's claimed limitations. As noted above, Dr. Unger's treatment notes are ambiguous as to the frequency, duration, and severity of Plaintiff's headaches during the relevant period, and the record must be further developed and clarified on that issue.   Defendant's contention -- that the ALJ properly disregarded Plaintiff's claimed limitations based on a lack of documentation as to the severity and frequency of her headaches -- is therefore unavailing.

Moreover, the ALJ's rejection of Plaintiff's testimony is improper, to the extent that the ALJ suggests that Plaintiff's headaches were largely "tension" headaches and could be controlled with medication. Indeed, the entirety of the record shows that Plaintiff consistently has experienced debilitating headache symptoms, regardless of whether Dr. Unger described such headaches as "migraine" headaches in his records, and she has tried numerous medications in an unsuccessful effort to control her headache pain and symptoms.  An ALJ may not render a medical judgment and interject his own medical opinion, nor may he substitute

sets forth a number of factors for an ALJ to consider in assessing a claimant's credibility, it does not require an ALJ to specifically discuss and analyze each and every one of the factors set forth therein and does not state that the failure to do so is reversible error.

17

his own diagnosis for that of the claimant's physician.  *See* <u>Tackett v.</u> <u>Apfel</u>, 180 F.3d 1094, 1102 (9th Cir. 1999); <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975).

Additionally, the ALJ's statement that Plaintiff refused to take Paxil misstates the record, and thus, is not a clear and convincing reason to reject Plaintiff's claimed symptoms and limitations.  In Dr. Unger's August 28, 2001 progress notes, he indicated that Plaintiff discontinued taking Paxil, because she reported an adverse reaction to it, namely, that it increased her headache-provoking anxiety.  (A.R. 188.)  Plaintiff also stated, under penalty of perjury, that she did try to take Paxil, but it caused her to have tremors and sweat, and lose her appetite; hence, she stopped taking it, because it made her feel worse that she already was feeling.  (A.R. 150 -- October 27, 2003 declaration of Plaintiff, submitted to the Commissioner on October 31, 2003, prior to the ALJ's decision.)  *See* <u>Reddick</u>, 157 F.3d at 722-723 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports" and by mischaracterizing the record).

The failure of medication to control Plaintiff's headache pain is further explained in Dr. Unger's April 4, 2003 report, in which he stated that Plaintiff had failed to respond to all headaches medications based on triptans and ergotamine derivatives, and was using three different medications for "rescue," including a sleeping pill, as well as Topomax, an anti-seizure medication.  (A.R. 266.)  The medications Plaintiff listed in her pain questionnaire attachment, which span a time period from May 1995 to April 3, 2002, are consistent with Dr. Unger's

18

statements in his April 4, 2003 report regarding Plaintiff's medication history.[4]  In addition to taking numerous medications, Plaintiff has sought various treatments to control her headaches, such as receiving magnesium intravenously and undergoing a series of sphenopalatine ganglion ("SPG") nerve block procedures, in which a long q-tip soaked with an anesthetic is placed through each nostril to the back of the throat for five to 10 minutes (A.R. 126).[5]  Furthermore, shortly following Plaintiff's last insured date, Plaintiff was prescribed narcotic pain medication, such as Demoral, Dilaudid, Depakote, and Restoril, as well as Topomax, an anti-seizure medication, suggesting that Plaintiff's condition was not improving and/or controlled with the other medications that she was taking on or before her December 31, 2001 last insured date.[6]

In stating that Plaintiff took medications while she was employed that allowed her to function in the workplace, even though Topomax controlled her headaches better but made her dizzy and drowsy, the ALJ improperly suggests that Plaintiff's testimony indicates that she could

---

[4]    In this attachment, Plaintiff notes the names of each medication taken and the dates that she took each medication until it was discontinued for being no longer effective or replaced by another medicine.  (A.R. 123.)

[5]    See A.R. 170-72 (magnesium intravaneous fluids given); A.R. 126 (Dr. Unger's notes describing SPG nerve block procedure); A.R. 155 (October 4, 2002, November 8, 2002, and November 18, 2002 clinical notes indicating that Plaintiff was provided SPG treatment); A.R. 265 (Dr. Unger's April 4, 2003 report stating that Plaintiff had undergone nerve block procedures).

[6]    See A.R. 177 (May 17, 2002 prescription for Dilaudid, Demerol, and Restoril "for pain relief and to help you sleep"); A.R. 183 (March 28, 2002 progress notes indicating "[s]top Depakote" and "[b]egin Topamax"); A.R. 185 (February 22, 2002 progress notes indicating "[b]egin Depakote").

19

take medication to control her headaches which would not preclude her ability to work. However, Plaintiff's testimony shows that she was missing substantial amounts of work, and stopped working in 1996, because she could no longer control her headaches with less strong medication, and she must use strong medication for her "full blown" headaches, which makes her so dizzy and drowsy that she does not believe it is safe for her to drive while taking them. (A.R. 279-80, 284-85, 287 -- Plaintiff's testimony that Propalac, a medication she was taking every day at the time of the hearing, made her dizzy and drowsy, and that she did not take such medication when she needed to drive; A.R. 286 -- Plaintiff's testimony that, for "full blown" headaches, she would take Anaprox and Allegra, which precluded her from working at all.) Despite Plaintiff's testimony regarding the side effects of her medication, the ALJ did not question Dr. Klein as to whether Plaintiff's medication could produce such side effects. Thus, the ALJ's implicit rejection of the side effects from Plaintiff's medication is not based upon substantial evidence. In addition, because Plaintiff testified as to various physical symptoms she experiences during her headaches, such as blurred vision, vomiting, and numbness in her tongue, lips, and fingertips (A.R. 280-81), as well as constant sensitivity to light, sound, and smell (A.R. 286), the ALJ erred by failing to delineate or differentiate his reasons for rejecting Plaintiff's testimony regarding these claimed symptoms. <u>Swenson</u>, 876 F.2d at 688.

Accordingly, the ALJ's rejection of Plaintiff's testimony concerning her claimed pain and limitations is not based on clear and convincing reasons and constitutes error. As the case is being remanded, the ALJ also should consider any additional statements which

clarify Plaintiff's testimony regarding her pain and limitations, such as these set forth in her October 27, 2003 Declaration and in the Migraine Diaries attached to the Joint Stipulation as "Exhibit A."

**C.    Remand Is Necessary**.

Because there is error in the ALJ's findings and the record requires further development, as discussed above, remand is appropriate to allow the ALJ the opportunity to remedy such errors and inadequacies. *See* Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)(when there are outstanding issues that must be resolved before the question of disability can be determined, remand is appropriate); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).  After developing the record as directed above, the ALJ should render new findings regarding Plaintiff's residual functional capacity and her claimed limitations.

CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel

1   for Plaintiff and for Defendant.

2

3        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

4

5   DATED:  March 31, 2006.

6                                      _____/s/_____

7                                      MARGARET A. NAGLE
                                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22